UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMES TURNTINE and PROMOTIONAL SERVICES, INC., <br><br>Plaintiffs, <br><br>v. <br><br>CHARLES PETERSON and REDEYE RHINO, LLC, <br><br>Defendants. | No. 4:19-CV-107 RLW |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss Plaintiffs' Petition (ECF No. 6). This matter is fully briefed and ready for disposition.

## BACKGROUND[1]

Plaintiff Promotional Services, Inc. d/b/a Partners Promoting Darts ("PPD") is a governing body for the sport of darts that operates a darts league and stages an annual darts competition in the Kansas City, Missouri area called the Tournament of Champions ("TOC"). (Petition ("Pet."), ¶2). Plaintiff James Turntine ("Turntine") is the owner and president of PPD. (Pet., ¶¶1,5). Defendant RedEye Rhino L.L.C. ("RedEye") sells darts-themed apparel and produces video content related to darts. (Pet., ¶7). Defendant Charles Peterson ("Peterson") is the managing member of RedEye. (Pet., ¶6). Defendants control a Facebook profile with the

---

[1] In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant. *U.S. ex rel. Raynor v. Nat'l Rural Utilities Co-op. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012); *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008).

name "Charles Rer (RedEye Rhino)." (Pet., ¶9). Defendants use the Charles Rer Facebook profile primarily to promote RedEye's business. (Pet., ¶9).

PPD and RedEye entered into a contract whereby RedEye was granted the right to be the exclusive jersey seller for the PPD during 2015, including at the 2015 TOC (the "2015 Exclusivity Agreement"). (Pet., ¶10). Pursuant to the agreement, RedEye also purchased $7,500 worth of TOC Vouchers—each of which entitled its holder to participate in the 2015 TOC—with the intent to offer the vouchers as prizes at RedEye Rhino darts competitions. RedEye was supposed to award all of its vouchers prior to August 1, 2015, but RedEye failed to award all of its vouchers prior to August 1, 2015. PPD repurchased $2,500 worth of vouchers from RedEye.

In 2016, PPD implemented new rules regarding branded darts-themed apparel and products at the TOC. (Pet., ¶12). Under the new rules, brands that marketed primarily to darts players could be worn at the 2016 TOC only if the brand made a $500 donation to PPD's charity of choice, the National Pediatric Cancer Foundation. (Pet., ¶12). RedEye was not granted the right to be the exclusive jersey provider at the 2016 TOC. (Pet., ¶13). RedEye also declined to make the donation necessary to become an authorized brand at the 2016 TOC. Thereafter, Peterson published multiple Facebook posts disparaging Turntine and PPD, including calling Turntine "Hitler." (Pet., ¶14). In response to these posts, PPD banned RedEye from sponsoring or otherwise participating in any PPD activities and events after the 2016 TOC. (Pet., ¶14). Thereafter, Defendants published several Facebook posts regarding Turntine and the PPD.

On December 3, 2018, Plaintiffs filed their Petition alleging three counts: Count I for Libel, Count II for Slander, and Count III for Libel. Defendants filed a Motion to Dismiss. Defendants assert that this Court lacks personal jurisdiction over Defendants. In the alternative,

Defendants maintain all counts of Plaintiffs' Petition should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failing to state claims upon which relief can be granted.

## DISCUSSION

### I. PERSONAL JURISDICTION

#### A. Standard for Personal Jurisdiction

"The basis for exercising personal jurisdiction over a non-resident party in Missouri is Missouri's long-arm statute." *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 910 (8th Cir. 2012). "Missouri's long-arm statute authorizes personal jurisdiction over defendants who, inter alia, transact business, make a contract, or commit a tort within the state." *Viasystems, Inc. v. EBM–Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011) (citing Mo. Rev. Stat. § 506.500.1 (2000)). "In adopting the long-arm statute, the Missouri legislature 'intended to provide for jurisdiction, within the specific categories enumerated in the statutes [e.g., transacting business or making a contract within the state,] to the full extent permitted by the due process clause.'" *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011) (brackets in original) (quoting *State ex rel. Metal Serv. Ctr. of Ga., Inc. v. Gaertner*, 677 S.W.2d 325, 327 (Mo. 1984) (en banc)). In all instances, the long-arm statute requires that the cause of action arise from the doing of the enumerated act. Mo. Rev. Stat. § 506.500.3 ("Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section."); *Johnson v. Gawker Media, LLC*, No. 4:15-CV-1137 CAS, 2016 WL 193390, at *3 (E.D. Mo. Jan. 15, 2016).

Further, "[e]ven if personal jurisdiction over a defendant is authorized by the forum state's long-arm statute, jurisdiction can be asserted only if it comports with the strictures of the Due Process Clause." *Viasystems*, 646 F.3d at 594. "The touchstone of the due-process analysis

remains whether the defendant has sufficient minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (internal quotation marks and quoted case omitted). "The fundamental inquiry is whether the defendant has purposefully availed itself of the benefits and protections of the forum state to such a degree that it should reasonably anticipate being haled into court there [.]" *Id.* (internal citation, quotation marks and quoted case omitted); *Johnson v. Gawker Media, LLC*, No. 4:15-CV-1137 CAS, 2016 WL 193390, at *3 (E.D. Mo. Jan. 15, 2016).

"Five factors determine whether sufficient contacts exist to support the exercise of personal jurisdiction: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of [the forum state] in providing a forum for its residents; and (5) the convenience or inconvenience to the parties. The first three factors are primary, but all five and the totality of the circumstances determine whether personal jurisdiction exists." *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 477 (8th Cir. 2012) (internal quotation marks and quoted case omitted); *Johnson v. Gawker Media, LLC*, No. 4:15-CV-1137 CAS, 2016 WL 193390, at *7 (E.D. Mo. Jan. 15, 2016). In all cases, specific jurisdiction is proper "only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities." *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008).

### B. Eighth Circuit Precedent

This case alleges claims for Libel on October 31, 2018 (Count I), Slander on November 18, 2018 (Count II), and Libel on November 18, 2018 (Count III) for statements and videos

posted on various Facebook pages. Defendants are located in Minnesota and presumably made their allegedly libelous and slanderous statements from there. (ECF No. 7 at 9; Pet, ¶¶7-8).

Although this is a close case, the Court holds that, at this stage of the litigation, Plaintiffs have sufficiently alleged this Court has personal jurisdiction over Defendants. Generally, courts have held that an out-of-state defendant must do more than direct a social media post at a plaintiff to establish a sufficient connection with the forum state for personal jurisdiction. *See Johnson v. Arden*, 614 F.3d 785, 797 (8th Cir. 2010) ("Posting on the internet from Colorado an allegedly defamatory statement including the name 'Missouri' in its factual assertion does not create the type of substantial connection between Heineman and Missouri necessary to confer specific personal jurisdiction."); *HVLPO2, LLC v. Oxygen Frog, LLC*, 187 F. Supp. 3d 1097, 1115 (D. Neb. 2016) (competitor's posting of allegedly defamatory statements on its website and its social media webpages did not constitute activity purposefully directed at Nebraska for purposes of personal jurisdiction); *Higgins v. Save Our Heroes*, No. CV 18-42(DSD/BRT), 2018 WL 2208319, at *3 (D. Minn. May 14, 2018).

However, the Court recognizes that Plaintiffs and Defendants had more than contacts than simply a social media posting. The Court holds that the nature and quality of Defendants' contacts with Missouri were such that they reasonably should have anticipated being haled into Court here. Defendants entered into a contract with Plaintiffs, Missouri residents, to act as a distributor and sponsor at a Missouri-based darts competition. (ECF No. 13 at 3). Pursuant to that contract, Defendants became a distributor of "vouchers" for the Missouri-based darts TOC competition and Defendants also travelled to Missouri and sold goods from the Missouri-based darts TOC competition. (ECF No. 13 at 3). As noted by Plaintiffs, "[a]ll of Defendants['] defamatory statements relate to these contacts with Missouri." (ECF No. 13 at 3). Finally, the

harmful effects of Defendants' purportedly defamatory statements were felt primarily in Missouri, which is Plaintiffs' residence and their primary place of business. (ECF No. 13 at 3). Although it is a close case, the Court holds that Defendants' contacts with Missouri take this case beyond those involving a single Facebook post and are sufficient to satisfy due process and the factors favor a finding of specific jurisdiction.

In addition, the Court holds that the second factor regarding the quality of the contacts weighs in favor of finding personal jurisdiction. As outlined above, Defendants had several contacts with Missouri. Defendants purposefully entered the commerce of Missouri to sell their wares at the 2015 TOC, and this lawsuit arises as a result of that contact. Defendants intentionally engaged in business in Missouri and with Missouri residents, and such contacts are closely related to Plaintiffs' claims. *Calder v. Jones*, 465 U.S. 783, 788, 104 S. Ct. 1482, 1486, 79 L. Ed. 2d 804 (1984) (quoting *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977) ("In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'"). Thus, the Court holds that this factor also weighs in favor of finding personal jurisdiction. Finally, the Court finds that the fifth due process factor, convenience of the parties, weights in favor of this Court exercising personal jurisdiction. The effects of Defendants' purportedly defamatory statements would primarily be felt in Missouri, where Plaintiffs reside and conduct substantial portions of their business. *See Elmore v. Owens-Illinois, Inc.*, 673 S.W.2d 434, 437 (Mo. 1984) ("[D]efamation produces a special kind of injury that has its principal effect among one's friends, acquaintances, neighbors and business associates in the place of one's residence. An injury from defamation, therefore, does have a center in one's place of domicile."); *Calder*, 465 U.S. at 789 (court in California had personal jurisdiction over a Florida resident where "the brunt of the harm, in terms both of

respondent's emotional distress and the injury to her professional reputation, was suffered in California"). Thus, the Court holds that it has personal jurisdiction over Defendants and denies the Motion to Dismiss for lack of personal jurisdiction.

## II. Failure to State a Claim

### A. Standard of Review

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp., v. Twombly*, 550 U.S 544, 570 (2007). A "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

### B. Application

The elements of defamation are (1) publication (2) of a defamatory statement (3) that identifies the plaintiff, (4) is false, (5) is published with the requisite degree of fault, and (6) damages the plaintiff's reputation. *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 820 (8th Cir. 2010) (citing *Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 70 (Mo. 2000). "In Missouri, whether language is defamatory and actionable is a question of law to be decided by the court, and the court must determine whether a statement claimed to be slanderous is reasonably capable of defamatory meaning." *Rockwood Bank v. Gaia*, 170 F.3d 833, 841 (8th Cir.1999); *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 820 (8th Cir. 2010); *King v. Union Station Holdings, LLC*, No. 4:12CV696SNLJ, 2012 WL 5351598, at *2 (E.D. Mo. Oct. 30, 2012); *Shepard v. Courtoise*, 115 F. Supp. 2d 1142, 1147 (E.D. Mo. 2000); *State ex rel. Diehl v. Kintz*, 162 S.W.3d 152, 155

(Mo. Ct. App. 2005)(Whether a statement is defamatory and actionable is a question of law); *Ribaudo v. Bauer*, 982 S.W.2d 701, 704 (Mo.Ct.App.1998) ("[T]he court must determine whether the statement is capable of having a defamatory meaning."). In making this determination the court must decide "whether the communication reasonably conveyed the meaning ascribed to it by plaintiff and, if so, whether the meaning was defamatory in character." *Kintz*, 162 S.W.3d at 155 (internal quotations and citations omitted). "If a statement is capable of a nondefamatory meaning, and can be reasonably construed in an innocent sense, [the Court] must hold the statement nonactionable as a matter of law." *Mandel v. O'Connor*, 99 S.W.3d 33, 36 (Mo. Ct. App. 2003) (citing *Ampleman v. Scheweppe*, 972 S.W. 2d 329, 333 (Mo. Ct. App. 1998). In making this determination, "the words must be stripped of any pleaded innuendo and construed in their most innocent sense." *Id.* (citation omitted). "The alleged defamatory words must also be considered in context, and the words are given their plain and ordinarily understood meaning." *Id.* (citation omitted).

Courts in this Circuit have addressed the standard for determining whether allegedly defamatory statements are opinion:

> Statements of opinion are accorded absolute privilege under the First Amendment, even if they are made maliciously or insincerely. *Ribaudo v. Bauer*, 982 S.W.2d 701, 704 (Mo.Ct.App.1998). However, the privilege does not apply when the statement of opinion implies the existence of undisclosed defamatory facts. *Id.* "The test for an ostensible opinion is whether a reasonable factfinder could conclude that the statement implies an assertion of objective fact." *Kintz*, 162 S.W.3d at 155 (citation omitted). To make this determination—which is also a question of law—the Court examines the totality of the circumstances to decide whether the ordinary reader would have treated the statement as opinion. *Ribaudo*, 982 S.W.2d at 705. "Neither imaginative expression nor rhetorical hyperbole is actionable as defamation." *Kintz*, 162 S.W.3d at 155 (citation omitted).

*Others First Inc. v. Better Bus. Bureau of Greater St. Louis, Inc.*, 105 F. Supp. 3d 923, 929–30 (E.D. Mo. 2015), *aff'd*, 829 F.3d 576 (8th Cir. 2016).

Plaintiffs argue that Defendants' Facebook posts have a defamatory meaning because the statements accuse Plaintiffs of lying in the course of their business and breaching a contract, thereby cheating Defendants out of thousands of dollars. (ECF No. 13 at 10). The Facebook post described in Count I states: "There is only one league that manipulates, lies and censors its players. 'Charles RER' C.E.O. of RedEye Rhino speaks up about the recent attacks from Jim Turntine of the TOC League." (Pet., ¶18). Several days prior to this publication, Turntine posted a statement to Facebook describing the deterioration of a prior business relationship between Turntine and Defendants. *See* ECF No. 13 at 13.

Plaintiffs contend that this Facebook post is defamatory because it is "capable of being understood as an assertion of fact: that Plaintiffs lie in the course of their business." (ECF No. 13 at 14). Defendants argue that this is a statement of opinion that is not capable of having a defamatory meaning under Missouri law. (ECF No. 7 at 17). Defendants contend that this language is part of a give-and-take exchange between the parties regarding recent statements made by Plaintiffs about their business dispute. (*Id.*).

The Court holds that this Facebook post, particularly in the context of Plaintiffs' prior Facebook post, is not defamatory as a matter of law. The Court holds that Defendants' characterization of Turntine as a liar and manipulator constitutes "loose language … that [is] part of the conventional give-and-take in our economic … controversies[.]" *Old Dominion Branch No. 496, National Association of Letter Carriers, AFL–CIO v. Austin,* 418 U.S. 264, 284, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974); *Shepard*, 115 F. Supp. 2d at 1147. The Court understands Defendants' post as a response to Plaintiffs' prior post and not as a statement of objective fact

regarding Plaintiffs' moral character. The Court grants Defendants' Motion to Dismiss as to Count I as a matter of law for failure to state a claim upon which relief can be granted.

In Count II, Plaintiffs allege that on November 18, 2018, Defendants published a video to the Charles Rer Facebook page in which Peterson alleged that Turntine caused PPD to violate the 2015 Exclusivity Agreement by preventing RedEye Rhino from selling all of its vouchers. The relevant portion of Peterson's comments is transcribed here:

> So let's go back to when it all started ... In 2016, I purchased vouchers—those TOC vouchers for thousands of dollars from TOC. We were giving them out at the RedEye Series . . . If you played in the TOC league, you could win this voucher, and you can make it to their big grand finale, and play. . . . So I purchased tickets to be part of this, okay, now when I got down to the end, there was about four or five tickets left, there was a couple men and a couple women, and I decided because we'd been going around going these blind draws, you know what I'm gonna go to the Kansas City area, because this is where the majority of the players are, who are gonna be part of the TOC, and it will be a great way for me to promote and get this out there, right?
> When Jim Turntine found out about that, the said NO. He was pissed. WHY? Because I'm bringing vouchers into his territory. While it was okay for me to go into everybody else's territory, from Washington all the way down to Texas or Minnesota, going to his area was a big no-no, because that affected him. So, I turned around and I was like, wait a minute here—I purchased these vouchers. I own the vouchers. So, you can tell me where I can and can't go with this? He says you can't go to my area. So obviously I was super pissed, because I invested thousands into these vouchers for me to be able to use the way I wanted to use, to go out to give to players and to do these draws and stuff, and I couldn't do it.
> So shortly after that—now this is crazy too—a post from Jim Turntine, without even being discussed with me, comes out and says RedEye Rhino is the exclusive jersey provider for the TOC—this is for 2016, okay. There's two things happening with this. Number one, I was completely that we were gonna be exclusive . . . I'm not gonna disagree with his call, because I'm like 'yes, I'll get my money back,' and I saw it as him getting right for the mistake that he made—not the mistake, the selfishness and greed that he was having selling me vouchers that I couldn't use.

Petition, ¶27. Plaintiffs argue that this is not an expression of opinion, but "accuses Plaintiffs of wrongfully preventing Defendant from enjoying the benefit of that [2015 Exclusivity Agreement]". (ECF No. 13 at 15-16). Plaintiffs argue Defendants' accusation that Plaintiffs

sold Defendants thousands of dollars-worth of unusable vouchers imputes that Plaintiffs lack integrity in their profession, which is an actionable defamatory statement. (ECF No. 13 at 16). Here, the Court holds that the average listener of Peterson's diatribe would find his statements were opinions, not facts. *Mandel v. O'Connor*, 99 S.W.3d 33, 38 (Mo. Ct. App. 2003). In fact, Peterson demonstrates that this statement was mere opinion when he prefaces it with, "I saw it as". Moreover, Defendants' statements would be construed by any listener as a mere narrative, stating his version of the collapse of the business relationship with Plaintiffs in response to Plaintiffs' statements. *Austin,* 418 U.S. at 284; *Shepard*, 115 F. Supp. 2d at 1147. Therefore, Plaintiffs' claim for slander in Count II must be dismissed as a matter of law for failure to state a claim upon which relief can be granted.

In Count III, Plaintiffs allege that Defendants posed the following libelous statement: "Yes he has lied about this situation to manipulate it. Telling people we refused to donate to his foundation and making that as the reason we are not involved." (Pet., ¶35a). A different third-party Facebook user wrote, "I get the censoring part with all the Facebook drama, but what do you mean Jim turntine lies? I don't want to be involved in a league that lies to it's [sic] players." Defendants responded, "He has lied about what he has been saying about me to manipulate the situation." (Pet., ¶35b). Similarly, another third-party Facebook user questioned, "Jim said on Facebook that this all started when you refused to make the charity donatiin [sic] –is that true?" In response, Defendants posted the following allegedly libelous statement: "NO! We refused to be a part of TOC because I didn't like how he does his business and I knew the bs that was to come. Jim uses the Pedatric [sic] Foundation donation to gain sympathy from people about what went don't [sic]. it's a complete lie" (Pet., ¶35c). Plaintiffs assert that these Facebook posts

"unambiguously assert that Plaintiffs told lies regarding the deterioration of their former business relationship." (ECF No. 13 at 17).

The Court holds that "these words—when stripped of any pleaded innuendo and construed in context with their plain and ordinarily understood meaning—are not capable of a defamatory meaning as a matter of law." *Others First Inc. v. Better Bus. Bureau of Greater St. Louis, Inc.*, 105 F. Supp. 3d 923, 933 (E.D. Mo. 2015), *aff'd*, 829 F.3d 576 (8th Cir. 2016). "The test to be applied to an ostensible 'opinion' is whether a reasonable factfinder could conclude that the statement implies an assertion of objective fact." *Nazeri v. Missouri Valley College,* 860 S.W.2d 303, 314 (Mo. banc 1993). Courts have held that "imaginative expression" and "rhetorical hyperbole" are not actionable as defamation. *Id.* (quoting *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 20, n.7, 110 S.Ct. 2695, 2705, 111 L.Ed.2d 1 (1990)). In the context of the disagreement between the parties over the demise of their agreement, the Court holds that Defendants' Facebook statements regarding Turntine cannot be construed as defamatory. Rather, Defendants' statements must be viewed as Peterson's explanation, from his point of view, for why their business relationship ended. *Nazeri,* 860 S.W.2d at 311 ("precedents hold that the alleged defamatory words must be considered in context, giving them their plain and ordinarily understood meaning"). As further evidence that the Facebook statements are expressions of Peterson's opinion, the Court finds it would be unable to determine if the underlying reasons for Defendants' purported belief that Turntine is a liar are well-founded. *See Nazeri,* 860 S.W.2d at 314 (quoting *Milkovich,* 497 U.S. at 18 ("expressions of 'opinion' may often imply an assertion of objective fact.")). That is, the Court would be unable to determine if Peterson chose not to be a part of the 2016 TOC because he "didn't like" how Turntine did business or if Turntine used the Pediatric Foundation donation to "gain sympathy from people."

These statements form that basis for Defendants' impression that Turntine is a liar, involve the subjective interpretation of data, and cannot be provable as false. *Smith v. Humane Soc'y of United States*, 519 S.W.3d 789, 801 (Mo. 2017). As a result, the Court holds that Defendants' statements alleged in Count III are not defamatory as a matter of law and Plaintiffs' Petition for libel fails to state a claim upon which relief can be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Plaintiffs' Petition (ECF No. 6) is **GRANTED**.

An appropriate Judgment is filed herewith.

Dated this 10th day of May, 2019.

*Ronnie L. White*

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**