UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMES TURNTINE and PROMOTIONAL SERVICES, INC., | ) ) ) |
| Plaintiffs, | ) ) No. 4:19-CV-107 RLW |
| v. | ) ) ) |
| CHARLES PETERSON and REDEYE RHINO, LLC, | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss Plaintiffs' Petition as to Defendant Charles Peterson ("Peterson"). (ECF Nos. 6, 32). This matter is fully briefed and ready for disposition.

**BACKGROUND**[1]

Plaintiff Promotional Services, Inc. d/b/a Partners Promoting Darts ("PPD") is a governing body for the sport of darts that operates a darts league and stages an annual darts competition in the Kansas City, Missouri area called the Tournament of Champions ("TOC"). (Petition ("Pet."), ¶2). Plaintiff James Turntine ("Turntine") is the owner and president of PPD. (Pet., ¶¶1,5). Defendant RedEye Rhino L.L.C. ("RedEye") sells darts-themed apparel and produces video content related to darts. (Pet., ¶7). Peterson is the managing member of RedEye. (Pet., ¶6). Defendants control a Facebook profile with the name "Charles Rer (RedEye Rhino)."

---

[1] In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant. *U.S. ex rel. Raynor v. Nat'l Rural Utilities Co-op. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012); *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008).

(Pet., ¶9). Defendants use the Charles Rer Facebook profile primarily to promote RedEye's business. (Pet., ¶9).

PPD and RedEye entered into a contract whereby RedEye was granted the right to be the exclusive jersey seller for the PPD during 2015, including at the 2015 TOC (the "2015 Exclusivity Agreement"). (Pet., ¶10). Pursuant to the agreement, RedEye also purchased $7,500 worth of TOC Vouchers—each of which entitled its holder to participate in the 2015 TOC—with the intent to offer the vouchers as prizes at RedEye Rhino darts competitions. RedEye was supposed to award all of its vouchers prior to August 1, 2015, but RedEye failed to award all of its vouchers prior to August 1, 2015. PPD repurchased $2,500 worth of vouchers from RedEye.

In 2016, PPD implemented new rules regarding branded darts-themed apparel and products at the TOC. (Pet., ¶12). Under the new rules, brands that marketed primarily to darts players could be worn at the 2016 TOC only if the brand made a $500 donation to PPD's charity of choice, the National Pediatric Cancer Foundation. (Pet., ¶12). RedEye was not granted the right to be the exclusive jersey provider at the 2016 TOC. (Pet., ¶13). RedEye also declined to make the donation necessary to become an authorized brand at the 2016 TOC. Thereafter, Peterson published multiple Facebook posts disparaging Turntine and PPD, including calling Turntine "Hitler." (Pet., ¶14). In response to these posts, PPD banned RedEye from sponsoring or otherwise participating in any PPD activities and events after the 2016 TOC. (Pet., ¶14). Thereafter, Defendants published several Facebook posts regarding Turntine and the PPD.

On December 3, 2018, Plaintiffs filed their Petition alleging three counts: Count I for Libel, Count II for Slander, and Count III for Libel. Defendants filed a Motion to Dismiss. This Court granted Defendants' Motion to Dismiss, finding that Defendants' statements were not defamatory as a matter of law. (ECF Nos. 20, 21). The Eighth Circuit reversed and remanded

the District Court's decision. (ECF Nos. 26, 27). Peterson asks this Court to consider Count III of the Motion to Dismiss, wherein Peterson contends that Plaintiffs' Complaint fails to state a claim against Peterson individually. (ECF No. 32). As discussed here, the Court denies Peterson's Motion to Dismiss Plaintiffs' claims against him personally.

## DISCUSSION

### A. Standard of Review

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp., v. Twombly,* 550 U.S 544, 570 (2007). A "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 556).

### B. Application

Peterson claims that the claims against him personally should be dismissed for failure to state a claim upon which relief may be granted. (ECF No. 7 at 22-23). Peterson contends that Plaintiffs have failed to allege any facts supporting their claim that Peterson performed any actions in his individual capacity. Rather, Peterson states that all of the allegedly defamatory and slanderous statements were made as part of Defendant Redeye's "professional dealings" with Plaintiffs. (ECF No. 7 at 23). Peterson refers to Mo. Rev. Stat. §347.057, which provides that a member of a limited liability company "is not liable, solely by reason of being a member or manager, or both, under a judgment, decree or order of a court, or in any other manner, for a debt, obligation or liability of the limited liability company, whether arising in contract, tort or

otherwise or for the acts or omissions of any other member, manager, agent or employee of the limited liability company."  Likewise, Peterson refers to Mo. Rev. Stat. §347.069, which provides that a member of "a limited liability company is not a proper party to proceedings by or against a limited liability company, except where the object is to enforce such person's right against or duty or liability to the limited liability company."

In response, Plaintiffs state that their allegations seek "to hold [Peterson] liable as a joint tortfeasor who had knowledge of and participated in the defamation, which the law permits." (ECF No. 3 at 18-19).  That is, Plaintiffs assert their claims against Peterson are not based "solely" upon his position as a member of RedEye.  *See* Mo. Rev. Stat. §347.057.  Likewise, Plaintiffs note that Mo. Rev. Stat. §347.069 further provides that, "[n]otwithstanding any provision of sections 347.010 to 347.187 to the contrary, any person, including a member, manager, employee or agent of a limited liability company, against whom a claim exists may be joined as a proper party to proceedings by or against a limited liability company to the extent the claim arises out of the transaction or occurrence that is the subject matter of the claim against the limited liability company."

At this early stage of the litigation, the Court holds that  the allegations against Peterson are sufficient to state a cause of action against him.  Plaintiffs' Petition contemplates that Peterson acted in conjunction with RedEye to make defamatory statements against Plaintiffs.  Specifically, Peterson's posts contain statements regarding his personal involvement with Plaintiffs, specifically using the pronoun "I" and discussing his personal adverse interactions with Turntine.  *See* Pet., ¶27 ("In 2016, I purchased vouchers…", "I purchased these vouchers, I own the vouchers.").  Peterson describes his personal involvement in the interactions with Plaintiffs that resulted in the allegedly defamatory and slanderous statements.  Therefore, the

Court finds that Plaintiffs have alleged sufficient facts to state a claim against Peterson. The Court denies the Motion to Dismiss as to Peterson.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Count III of Plaintiffs' Petition as to Charles Peterson (ECF Nos. 6, 32) is **DENIED**.

Dated this 15th day of March, 2021.

*/s/ Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**